UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DIRLEAN JONES,

       Plaintiff,

v.                                                                                    Case No. 1:14-CV-996

COMMISSIONER OF SOCIAL                            HON. GORDON J. QUIST
SECURITY,

       Defendant.
_____/

## OPINION

This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Social Security Act. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Because the Court concludes that the Commissioner's decision is supported by substantial evidence and properly applied the applicable legal standards, the Court will affirm the Commissioner's decision to deny benefits.

### BACKGROUND

Plaintiff was born on October 3, 1966, and worked as a hand packager, industrial truck operator, and spray painter. (A.R. 20–21, 137.) Plaintiff filed applications for DIB and SSI benefits on September 21, 2012, alleging that she became disabled on January 1, 2012. (A.R. 137–49.) Plaintiff's alleged onset date was later amended to October 5, 2012. (A.R. 12.) Plaintiff alleged that

she was disabled due to lupus, fibromyalgia, thyroid problems, and migraine headaches. (A.R. 213.) After the claim was initially denied, Plaintiff requested a hearing. On November 5, 2013, Administrative Law Judge (ALJ) Luke A. Brennan conducted a hearing, at which Plaintiff and Richard Riedl, an impartial vocational expert, testified. (A.R. 12.) On January 17, 2014, ALJ Brennan issued a decision finding that Plaintiff was not disabled under the Act. (A.R. 22.)

The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (A.R. 1–5.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.

1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Part 404, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

3

The Plaintiff bears the burden of establishing the right to benefits, *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ then determined that since the alleged onset date, Plaintiff suffered from severe impairments, including fibromyalgia, affective disorder, and anxiety disorder. (A.R. 14.) The ALJ concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (A.R. 15.).

The ALJ then determined that Plaintiff had the RFC to perform less than sedentary work. In particular, the ALJ found the following limitations:

> [T]he claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours and stand and/or walk for two hours for a total of eight hours in a standard workday. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme heat or cold, humidity, or vibration. The claimant is limited to perform simple, routine tasks.

(A.R. 17.) At step four, the ALJ determined that Plaintiff could not perform her past relevant work. (A.R. 20–21.) Finally, at step five, based on the testimony of the Vocational Expert (VE), the ALJ found that, considering Plaintiff's RFC, age, education, and work experience, Plaintiff could still perform jobs that existed in significant numbers in the national economy, including assembler, production inspector, and surveillance system monitor. (A.R. 21–22.) Accordingly, the ALJ determined that Plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff raises the following issues:

1. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating specialist.

2. The ALJ committed reversible error when he failed to properly consider Plaintiff's impairment of fibromyalgia.

3. The ALJ committed reversible error when he improperly determined that Plaintiff had no mental disability.

4. The ALJ committed reversible error by using improper boilerplate language to support his opinion.

5. The ALJ committed reversible error when he failed to follow the vocational expert's answers to accurate hypothetical questions.

**I.  The ALJ Properly Evaluated the Medical Opinions**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or

5

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (per curiam) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). Such reasons must be "'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR No. 96-2p, 1996 WL 374188, at *5). This requirement "'ensures that the ALJ applies the treating physician rule and

permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

The ALJ gave the opinion of a non-examining state agency physician, who reviewed Plaintiff's medical records, great weight because the ALJ found it consistent with the medical record. In contrast, the ALJ gave the opinions of Plaintiff's treating rheumatologist and her primary care physician little weight. Plaintiff contends that the ALJ's treatment of the opinion evidence—affording great weight to the non-examining agency physician and giving little weight to the opinions of the treating physicians—is contrary to *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013). However, Plaintiff mischaracterizes *Gayheart*. That case does not stand for the proposition that an ALJ may not give great weight to the opinion of a non-treating and non-examining source when a treating physician has given an opinion. Rather, as mentioned above, *Gayheart* affirms that the ALJ must "give good reasons" for according less than controlling weight to a treating source's opinion. *Id.* at 376. Simply stating that the physician's opinions "are not well-supported by any objective findings" and are inconsistent with other substantial evidence is not enough. *Id.* at 376–77.

    **A.**    **Dr. Head**

On January 24, 2013, Dr. Andrew J. Head, M.D., Plaintiff's treating rheumatologist, opined that Plaintiff "remains disabled and limited to sedentary activity." (A.R. 391.) Dr. Head stated that he first restricted Plaintiff's work in September 2010 and since that time "her functioning has continued to decline." Dr. Head further stated that Plaintiff's prognosis was "poor," she would not

7

"be able to function in a competitive work environment," and she could not be "gainfully employed." (*Id.*)  Dr. Head felt that Plaintiff's functional status would not improve." (*Id.*)  In November 2013, Dr. Head completed a Fibromyalgia Medical Source Statement in which he indicated that Plaintiff's symptoms included eighteen tender points; fatigue; chronic widespread pain; sleep disturbance; and depression. (A.R. 624.) Dr. Head also noted that Plaintiff had been diagnosed with lupus, her prognosis was poor, and emotional factors contributed to the severity of her symptoms and functional limitations. (*Id.*) Dr. Head indicated that movement/overuse, stress, and sleep problems precipitated Plaintiff's pain, which was chronic and widespread with "periodic worsening." (A.R. 625.) With regard to functional limitations, Dr. Head estimated that Plaintiff could walk for less than one city block without rest or severe pain; could sit for thirty minutes at one time; could stand for ten minutes at one time; and could sit and stand/walk for less than two hours in an eight-hour work day. (*Id.*) Dr. Head said that Plaintiff would need a job that allowed her to shift positions at will and would need to take unscheduled breaks during the work day for five-to-ten minutes "every 30-60" minutes. (A.R. 625–626.) Dr. Head opined that Plaintiff could "rarely" lift less than ten pounds, could "never" twist, stoop, crouch/squat, climb ladders, or climb stairs, could "rarely" look up or down or turn her head to the right or left, and could "never" hold her head in a static position. He also opined that Plaintiff could use her hands, fingers, and arms only 10% of the time for grasping objects and fine manipulations and could never reach overhead. (A.R. 626.) Dr. Head said that Plaintiff was likely to be "off task" 25% or more of the time due to the effect of her symptoms on her attention and concentration, and he indicated that Plaintiff's impairments would cause her to miss more than four days of work per month and that she was incapable of even "low stress" work. (*Id.*)

      The ALJ discussed Dr. Head's opinions as follows:

8

> The opinions of [Dr.] Head . . . are afforded little weight (Exhibits 4F; 13F). While he is a treating source of the claimant, his opinions are conclusory and not supported by the record. On January 24, 2013, he indicated the claimant was disabled and limited to sedentary activity. At that time, he indicated the claimant would not be able to function in a competitive work environment or be gainfully employed. This opinion does not fully list the claimant's limitations. Furthermore, Dr. Head's own records indicate the claimant does not appear to be in acute distress and had full muscle strength (Exhibit 3F/2). Dr. Head completed a more thorough description of the claimant's limitations on November 4, 2013, but this opinion includes several severe limitations that are not consistent with the medical evidence. For example, Dr. Head opined the claimant could never climb stairs. His own medical records from October 29, 2013 indicate the claimant can climb two flights of stairs, albeit with difficulty (Exhibit 12F).

(A.R. 20.)

The ALJ articulated good reasons, which were well supported in the record, for giving Dr. Head's opinions little weight. First, regarding Dr. Head's January 24, 2013 opinion, the ALJ correctly observed that Dr. Head failed to fully list Plaintiff's limitations, and his opinion that Plaintiff would not be able to function in a competitive work environment was conclusory in nature. An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Haller*, 246 F.3d 762, 772 (6th Cir. 2001). Moreover, a treating physician's determination that a claimant is disabled is not entitled to any special significance because the determination of disability is an issue reserved to the Commissioner, not the treating physician. *See* 20 C.F.R. § 404.1527(d)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Dr. Head's November 2013 opinion was more thorough and complete in describing Plaintiff's limitations. Nonetheless, the ALJ concluded that the severe limitations that Dr. Head specified were inconsistent with the medical evidence, including Dr. Head's own records. For example, Dr. Head opined that Plaintiff could never climb stairs, but his own treatment notes reflected that on several occasions Plaintiff reported that she could climb two or more flights of

9

stairs, albeit with "some difficulty." (A.R. 345, 351, 360.) The ALJ also found minimal evidence supporting the extent of limitation to which Dr. Head opined. (A.R. 18.) In particular, Plaintiff reported that she was able to walk outdoors on flat ground, with or without difficulty, (A.R. 345, 360, 449), and although Dr. Head identified neck-movement limitations, his treatment notes and those of Plaintiff's other providers do not reference complaints by Plaintiff of neck pain or clinical findings supportive of such limitations. (A.R. 227, 398, 315, 449-50.) Moreover, the medical records consistently state that Plaintiff retained full muscle strength, had no focal deficits and no swollen joints, was in no acute distress, and had a normal gait. (A.R. 325, 345–46, 352.) Finally, the ALJ questioned the consistency of Dr. Head's trigger point findings, noting that on several occasions Dr. Head reported that Plaintiff had multiple tender points but rarely stated how many points were positive. (A.R.)

In sum, viewing the record as a whole, the Court concludes that the ALJ gave good reasons for the weight he attributed to Dr. Head's opinion. The extreme restrictions that Dr. Head identified were inconsistent with the record as a whole, which indicated that Plaintiff was not as limited as Dr. Head opined.

    **B.**    **Dr. Grzeszak**

On June 26, 2012, during an examination by Plaintiff's primary care physician, Dr. Joanne Grzeszak, Plaintiff mentioned the possibility of applying for disability. Dr. Grzeszak told Plaintiff that "maybe she should look at disability." (A.R. 334.) In a subsequent treatment note, Dr. Grzeszak stated that Plaintiff was not able to work. (A.R. 484.)

    The ALJ wrote:

> The statements from Dr. Joanne Grzeszak regarding the claimant's ability to perform work are afforded little weight (Exhibit 2F/12). The claimant told this doctor she was considering disability, and Dr. Grzeszak said the claimant "maybe should look at disability." This is not really an opinion as to the claimant's functioning, as it

> does not indicate what limits the claimant has, if any, or even if this doctor believes she was disabled. Another record from Dr. Grzeszak seems to suggest she thought the claimant was unable to work, but this seems to [sic] one of the claimant's reports (Exhibit 8F/4). Dr. Grzeszak later indicated she was going to send a letter to Dr. Head asking his opinion. Accordingly, Dr. Grzeszak's statements are afforded little weight.

(A.R. 20.)

Although Plaintiff argues that the ALJ erred in giving little weight to Dr. Grzeszak's opinions, Plaintiff fails to cite any persuasive reason why Dr. Grzeszak's opinions were entitled to greater weight. The ALJ gave good reasons for discounting those opinions and Plaintiff has not shown that the ALJ erred by doing so.

### C. Dr. Tanna

On January 19, 2013, Dinseh Tanna, M.D., a state agency medical consultant, reviewed Plaintiff's medical records and concluded that Plaintiff was not disabled. (A.R. 69.) Dr. Tanna opined that, despite her limitations, Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; could stand, sit, or walk for about six hours in an eight-hour workday; and retained an unlimited ability to push or pull (subject to the lifting and carrying limitations). (A.R. 67.) Dr. Tanna also opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds and could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*) Dr. Tanna concluded that Plaintiff's impairments imposed no manipulative limitations, but they would impose certain environmental limitations. (A.R. 67–68.)

With regard to Dr. Tanna's opinion, the ALJ wrote:

> [T]he opinion of Dinseh Tanna, MD, the State agency medical consultant, is entitled to great weight, as it is consistent with the record (Exhibit 1A). The State agency medical consultant is a medical expert who has had the opportunity to review the entirety of the claimant's medical record and is also familiar with Social Security Regulations. The State agency medical consultant opined that the claimant is limited to work at the sedentary exertional level with additional limitations. This opinion is consistent with the medical record, which indicates the claimant has fibromyalgia

> but retains full muscle strength and normal neurological functioning. Accordingly, I find that the opinion of the State agency medical consultant is consistent with the record and affords [sic] it considerable weight.

(A.R. 19–20.)[2]

The ALJ explained that he assigned greater weight to Dr. Tanna's opinion because it was consistent with the medical record. As discussed above, the medical evidence indicated that Plaintiff's ability to work was not limited to the extent she alleged. Thus, Plaintiff has not shown that the ALJ erred in according Dr. Tanna's opinion greater weight than the opinions of Plaintiff's treating doctors.[3]

## II. The ALJ Properly Considered Plaintiff's Mental Impairments

Plaintiff contends that the ALJ erred in not finding that Plaintiff had a mental disability. (Dkt. # 11 at Page ID#802.) She further asserts that the ALJ should have considered her mental conditions as part of his RFC determination. (*Id.* at Page ID#17.)

Plaintiff's argument is a bit puzzling. At step two, the ALJ found that Plaintiff's affective and anxiety disorders were severe impairments. (A.R. 14.) In addition, the ALJ considered evidence bearing on Plaintiff's mental functioning, including her global assessment of functioning, or GAF, scores—which he afforded little weight—and concluded that Plaintiff was mildly limited in performing the activities of daily living and in social functioning and moderately limited in

---

[2] As the Commissioner correctly notes, Dr. Tanna opined that Plaintiff was capable of performing a reduced range of light exertion work rather than sedentary work. Thus, the ALJ's RFC was more restrictive than Dr. Tanna's opinion.

[3] Plaintiff contends that because Dr. Tanna did not review the evidence in this case after January 9, 2012—including Dr. Head's opinion setting forth Plaintiff's restrictions—the ALJ could not rely on Dr. Tanna's opinion to deny benefits. For this reason, Plaintiff argues that reversal and remand is warranted. However, an ALJ is not precluded from relying on the opinion of a non-examining state agency physician that did not consider the complete medical record if the ALJ gives "some indication that [he] at least considered [the additional evidence] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3). The ALJ gave such an indication here.

maintaining concentration, persistence, or pace. (A.R. 16–17, 20.) The ALJ thus included appropriate limitations of simple, routine tasks in Plaintiff's RFC. (A.R. 17.)

Plaintiff has cited no evidence indicating that the ALJ should have concluded that Plaintiff's mental condition required greater restrictions than those the ALJ included in his RFC determination. Moreover, based on the Court's review of the record, substantial evidence supports the ALJ's conclusion that Plaintiff's mental limitations were not more severe. Accordingly Plaintiff has not shown that the ALJ erred in failing to consider her mental impairments.

### III. The ALJ Properly Evaluated Plaintiff's Credibility

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff's sole argument regarding the ALJ's credibility finding is that the ALJ based his credibility finding on boilerplate language. Plaintiff contents that under the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), an ALJ's reliance on boilerplate credibility language demonstrates that his findings are not supported by substantial evidence. Even if *Bjornson* were binding on this Court, which it is not, the concerns the Seventh Circuit raised in that case are not present in the instant case, even though the ALJ in the instant case recited similar language. A review of the ALJ's decision shows that he gave specific reasons for his credibility determination, such as that Plaintiff's complaint of severe pain were not consistently supported by the medical records. (A.R. 19.) Accordingly, Plaintiff has failed to demonstrate error. *See Delp v. Comm'r of Soc. Sec.*, No. 1:13-CV-840, 2014 WL 4748696, at *6 (W.D. Mich. Sept. 24, 2014) (noting that "the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility").

**IV.     The ALJ Did Not Err By Not Following The VE's Testimony Concerning Certain Limitations**

In her last claim of error, Plaintiff contends that the ALJ erred by failing to follow the accurate testimony of the VE that there were no jobs Plaintiff could perform if certain limitations were included. Although Plaintiff does not specify what limitations she believes the ALJ failed to include, her citation to the record and reference to Plaintiff's mental impairment indicates that Plaintiff was referring to the limitations that Dr. Head gave in his opinion—that Plaintiff would be off task 25% or more of the time due to the effect of her symptoms on attention and concentration, Plaintiff would miss more than four days of work each month, and Plaintiff was incapable of even "low stress" work. (Dkt. # 11 at Page ID#804 (citing A.R. 58–59).)

In his hypothetical questions to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.*,

987 F.2d 1230, 1235 (6th Cir. 1993).  As discussed above, the ALJ gave Dr. Head's opinion little weight because it was inconsistent with other substantial evidence, including Dr. Head's own treatment notes.  And, as the Court has already concluded, the ALJ gave good reasons for his treatment of Dr. Head's opinion.  Moreover, the mental health limitations that the ALJ found were consistent with Plaintiff's mental health treatment notes and Plaintiff's own reports.  Thus, the ALJ did not err by failing to include mental health limitations that he found were not credible and supported by the record.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Commissioner's decision to deny Plaintiff disability insurance benefits and supplemental security income.

An Order consistent with this Opinion will enter.


Dated:  September 30, 2015                   /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE